1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

ZOHRAB BAHRIKYAN,

No.  2:22-cv-00894-MCE-DB

12

Plaintiff,

13

v.

**MEMORANDUM AND ORDER**

14

TRANSAMERICA LIFE INSURANCE
COMPANY,

15
16

Defendant.

17
18

By way of this action, Plaintiff Zohrab Bahrikyan ("Plaintiff") seeks to recover the

19

proceeds of a life insurance policy taken out from Defendant Transamerica Life

20

Insurance Company ("Defendant") by his now-deceased wife, Amalya Sukiasyan

21

("Decedent").  Presently before Court is Defendant's Motion for Summary Judgment as

22

to all claims.  ECF No. 18.  For the following reasons, that Motion is GRANTED.[1]

23

///

24

///

///

25

///

26

///

27
28

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

1

1

2

**BACKGROUND**[2]

3    On August 10, 2019, Defendant issued Decedent a $500,000 term life policy.

4  Decedent made the purchase through one Anna Avetisyan, to whom she had been

5  referred by a mutual friend.  Avetisyan testified that she is an independent contractor for

6  World Financial Group ("WFG"), which she describes as a distribution company selling

7  products for multiple insurance and investment companies.  She does not have the

8  authority to issue life insurance policies on behalf of any insurer she is appointed to, has

9  no authority to decide whether a policy gets issued once an application is submitted, and

10  has no authority to decide whether a claim for policy death benefits is payable.  Only the

11  insurers themselves have the authority to approve applications and pay death claims.

12    Avetisyan met in person with Decedent three times during the policy application

13  process.  She testified that they spoke primarily in English during those meetings,

14  although Avetisyan is fluent in both English and Armenian, Decedent's native language.

15  Avetisyan testified that Decedent had advised that she could read and understand

16  English.  Plaintiff indicated in his deposition, however, that at the time Decedent was

17  shopping for her policy she would have needed "a lot of assistance" with the English

18  language.

19    In any event Avetisyan testified that she went over the policy application in detail

20  with Decedent.  As is relevant here, Question 18 in Part I of the application asked "Have

21  you ever been convicted of a felony, misdemeanor or infraction other than a traffic

22  violation?  If yes, provide full details including state and date of offense."  Decl. of Angela

23  Stransky, ECF No. 18-4, Ex. 1-B.  Avetisyan recorded Decedent's answer to that

24  question as "No."  Id.  Decedent signed the application, which also stated that "the

25  statements and answers given in this application are true, complete, and correctly

26

27    [2] Unless otherwise indicated, the following material facts are undisputed and are taken, sometimes verbatim, from Defendant's statement of undisputed material facts and Plaintiffs' Responses thereto.  ECF No. 23.

28

1   recorded to the best of my knowledge and belief . . . and shall be the basis for any

2   contract issued on this application."  Id.  The Policy was thereafter issued and signed by

3   Decedent.

4        Unfortunately, Decedent passed away on April 16, 2021, after being struck by a

5   vehicle, and Plaintiff submitted a claim a few days later.  According to Plaintiff, Avetisyan

6   notified him of the policy's existence after Decedent's death because Decedent had not

7   wanted Plaintiff to know she was obtaining life insurance.  Plaintiff admits he had

8   "absolutely no idea" that she was so insured.  Avetisyan also purportedly advised

9   Plaintiff that the case was "normal" and it would be "resolved" within a couple of months.

10        In any event, Decedent's death occurred during the Policy's "contestability

11   period," a two-year period in which Defendant was contractually entitled to contest the

12   Policy.  Defendant accordingly open an investigation into Plaintiff's claim.

13        Through that investigation, Defendant discovered that in the years prior to

14   applying for life insurance, Decedent had been arrested twice for theft-related offenses.

15   In November 2016, she was arrested for stealing from a Sacramento area JCPenney

16   department store.  In February 2017, she pled nolo contendere—which in turn is treated

17   as a guilty plea—to a misdemeanor violation of California Penal Code § 487(A).  In lieu

18   of a 30-day jail term and three-year probationary sentence, Decedent was enrolled in the

19   Sacramento County Deferred Entry of Judgment ("DEF") program.  One condition of that

20   program was that Decedent obey all laws for two years, after which the criminal

21   complaint against her would be dismissed.

22        In November 2018, however, Decedent was again cited for theft, this time at a

23   Sacramento area Home Depot location.  She once again pled nolo contendere, this time

24   in February 2019, to a new violation of § 487(A), stating in English that she pled "no

25   contest."  At her sentencing for the Home Depot theft, her sentence for the JCPenney

26   theft was recalled since she had not complied with the DEF condition that she obey all

27   laws for two years.  Decedent declined the services of an English interpreter and

28   proceeded with her sentencing in English, during which she was sentenced to three

3

1  years of informal probation in each separate criminal case.  She was thus still on

2  probation when she applied for the policy here.

3     Defendant's applicable criminal history underwriting guidelines categorized

4  criminal activity into "Serious" and "Less Serious" categories, Decedent's crimes falling

5  into the latter group.  When an applicant discloses a history of multiple "Less Serious"

6  criminal convictions, Defendant considers the length of time since the end of the

7  applicant's release from jail, prison, probation, parole, or suspended sentence in

8  determining whether to approve a life insurance application.  An application must be

9  denied if the applicant is actively subject to probation at the time they apply for

10 insurance.  An application will only be permitted if the applicant is at least one year

11 removed from successfully completing any sentence for a "Less Serious" conviction.  It

12 follows then that had Decedent disclosed her convictions at the time of her application, it

13 would have been denied.

14    Accordingly, given that Decedent had not disclosed these convictions on her

15 insurance application, which Defendant considered to be material omissions, it rejected

16 Plaintiff's claim, rescinded the Policy, and issued Plaintiff a refund check for the

17 premiums paid.[3]  Plaintiff thereafter initiated this action in Sacramento County Superior

18 Court alleging claims for breach of contract and breach of the implied covenant of good

19 faith and fair dealing.  Defendant removed the action here and now moves for judgment

20 on both causes of action.

21

22                    **STANDARD**

23

24    The Federal Rules of Civil Procedure[4] provide for summary judgment when "the

25 movant shows that there is no genuine dispute as to any material fact and the movant is

26  _____

27    [3] The letter rejecting Plaintiff's claim referred to "material omissions of health history," but it is clear
    from reading the letter in its entirety that Defendant relied solely on Decedent's criminal history to deny the
    claim.  Stransky Decl., ECF No. 18-10, Ex. 1-H.

28    [4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

1  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

2  Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

3  dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

4  Rule 56 also allows a court to grant summary judgment on part of a claim or

5  defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

6  move for summary judgment, identifying each claim or defense—or the part of each

7  claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

8  Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a

9  motion for partial summary judgment is the same as that which applies to a motion for

10  summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

11  Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

12  judgment standard to motion for summary adjudication).

13  In a summary judgment motion, the moving party always bears the initial

14  responsibility of informing the court of the basis for the motion and identifying the

15  portions in the record "which it believes demonstrate the absence of a genuine issue of

16  material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

17  responsibility, the burden then shifts to the opposing party to establish that a genuine

18  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co., Ltd. v.

19  Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co.,

20  391 U.S. 253, 288–89 (1968).

21  In attempting to establish the existence or non-existence of a genuine factual

22  dispute, the party must support its assertion by "citing to particular parts of materials in

23  the record, including depositions, documents, electronically stored information,

24  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

25  not establish the absence or presence of a genuine dispute, or that an adverse party

26  cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

27  opposing party must demonstrate that the fact in contention is material, i.e., a fact that

28  might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

1   Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

2   Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992).  The opposing party must also

3   demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

4   such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

5   477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

6   before the evidence is left to the jury of "not whether there is literally no evidence, but

7   whether there is any upon which a jury could properly proceed to find a verdict for the

8   party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251

9   (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).

10  As the Supreme Court explained, "[w]hen the moving party has carried its burden under

11  Rule [56(a)], its opponent must do more than simply show that there is some

12  metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  Therefore,

13  "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

14  non-moving party, there is no 'genuine issue for trial.'"  Id. at 587.

15      In resolving a summary judgment motion, the evidence of the opposing party is to

16  be believed, and all reasonable inferences that may be drawn from the facts placed

17  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

18  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

19  obligation to produce a factual predicate from which the inference may be drawn.

20  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd,

21  810 F.2d 898 (9th Cir. 1987).

22

23                              **ANALYSIS**

24

25      The Court finds that Decedent's negative answer to the question regarding her

26  criminal history constitutes a material misrepresentation justifying Defendant's recission

27  of the policy.  There can be no breach of a rescinded contract and Plaintiff's claims thus

28  fail.

"[An insurance company] has the unquestioned right to select those whom it will insure and to rely upon him who would be insured for such information as it desires as a basis for its determination to the end that a wise discrimination may be exercised in selecting its risks." Robinson v. Occidental Life Ins. Co. of Cal., 131 Cal. App. 2d 581, 586 (2d Dist.1955). "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract . . . and which the other has [no] . . . means of ascertaining." Cal. Ins. Code § 332; see also Robinson, 131 Cal.App.2d at 585. "Three factors are reviewed in determining whether an insurance company has the right to rescind a policy, which are: 1) that the applicant made a misrepresentation; 2) that the misrepresentation was material; and 3) that the applicant knew that he made a material misrepresentation." Casey by Casey v. Old Line Life Ins. Co. of Am., 996 F. Supp. 939, 944 (N.D.Cal.1998) (citing Trinh v. Metro. Life Ins. Co., 894 F.Supp. 1368, 1372 (N.D.Cal.1995)). Such "[c]oncealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Cal. Ins. Code § 331.

It is undisputed that Decedent made a misrepresentation in the application when she denied having any criminal convictions despite still being on probation for theft-related misdemeanors. It does not matter, as Plaintiff argues, that Decedent purportedly disagreed with the factual underpinnings of the charges. The fact is that Decedent was convicted of two misdemeanors and she failed to disclose them on the application.

This misrepresentation was also undoubtedly material. The question was important enough for Defendant to include on its application so that its underwriters could effectively evaluate potential candidates. Moreover, Defendant has offered undisputed evidence that had Decedent disclosed that she had two recent convictions and was still serving a term of probation, her application would necessarily have been denied. That is sufficient to establish materiality. See Trinh, 894 F. Supp. at 1372-73.

Finally, the court concludes that Decedent knew she made a material misrepresentation. There is simply no way that Decedent did not know she had

7

sustained two criminal convictions and was on probation when she applied for insurance.  As indicated, she had appeared in court only a few months prior and made clear in her colloquy that she was understood the criminal proceedings.  That is sufficient to establish her knowledge.

Plaintiff tries to dissuade the Court from the foregoing conclusions by arguing that rescission is improper because:  (1) Decedent's grasp of the English language was somewhat lacking at the time she applied for the policy; (2) her misrepresentation was not related to Decedent's cause of death; and (3) there are disputed facts as to whether Avetisyan is an employee of Defendant as opposed to an independent contractor and whether she bound Defendant to pay out the policy proceeds when she purportedly advised Plaintiff his claim would be "resolved."  None of these arguments have merit.

First, Plaintiff's testimony regarding whether Decedent understood the application and policy terms is based purely on his own speculation.  Plaintiff was not present at any of Decedent's meetings with Avetisyan and did not even know that Decedent had sought insurance.  Moreover, the admissible evidence in the record establishes that Decedent was conversant enough in English to waive the assistance of an interpreter, plead nolo contendere and be sentenced in criminal court.  It is also undisputed that Avetisyan spoke Armenian and would have been able to translate the application terms should Decedent have needed it.

Second, it is irrelevant whether the facts concealed by Plaintiff were somehow implicated in her cause of death.  Plaintiff has identified no law standing for the proposition that the misrepresentation identified must be causally related to an insured's passing.

Finally, the only admissible evidence in the record supports the conclusion that Avetisyan was an independent contractor who could not bind insurers to policy decisions and who made no promises to the contrary here.  Plaintiff's purported evidence in support of his "employment" theory is a printout from a webpage that is unauthenticated, lacks foundation, and does nothing substantively to contradict Avetisyan's testimony.

8

Decl. of Kevin W. Harris, ECF No. 24-3, Ex. 3.  Even if that was not the case, however, the only evidence Plaintiff offers to show that Avetisyan committed Defendant to paying Plaintiff's claim is her purported statement that the claim would be "resolved" shortly. But Plaintiff's testimony to that effect is inadmissible hearsay and Avetisyan's statement, even if made, would fall far short of binding Defendant to any specific obligations.  At base, Plaintiff has offered no evidence showing the existence of a triable issue of material fact as to any aspect of Defendant's recission argument, and he cannot succeed on the merits of claims.

**CONCLUSION**

For the reasons just stated, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED.  The Clerk of the Court is directed to enter judgment in Defendant's favor and close this case.

IT IS SO ORDERED.

Dated:  June 25, 2024

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE

9